# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL GORRIO,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **SUPERINTENDENT JOSEPH TERRA,** | : | |
| *et al.,* | : | **No. 23-4366** |
| *Defendants* | : | |

## MEMORANDUM

PRATTER, J.                                                                        DECEMBER _____, 2023

Plaintiff Michael Mr. Gorrio, a convicted and sentenced prisoner incarcerated at SCI Phoenix, raises claims against numerous prison officials based on the conditions of Mr. Gorrio's confinement. Mr. Gorrio also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Mr. Gorrio leave to proceed *in forma pauperis*, sever certain claims from this lawsuit, dismiss certain of his claims upon statutory screening, and permit the remainder of his claims to proceed.

## BACKGROUND[1]

Mr. Gorrio names the following thirty-three Defendants: (1) Superintendent Joseph Terra; (2) CO Shorter; (3) CO Keil; (4) CO Barretto; (5) CO Edwards; (6) CO Rodgers; (7) CO Johnson; (8) CO Nesmith; (9) CO II Green; (10) CO II Weber; (11) CO II Rivera; (12) CO II Kirin; (13) Lt. Thompson; (14) Lt. Jolliff; (15) Lt. Hunter; (16) Captain Drusel; (17) Major Fitzgerald-Young; (18) Lt. Buggey; (19) Lt. Wade; (20) Lt. Hall; (21) Lt. Wright; (22) Lt. White; (23) Unit Manager Wychunis; (24) Hearing Examiner Yodis; (25) Major Mascellino; (26) Deputy Superintendent

---

[1] The following allegations are taken from Mr. Gorrio's Complaint. The Court adopts the pagination supplied by the CM/ECF docketing system.

Hensley; (27) Deputy Superintendent Sipple; (28) Deputy Superintendent Bradley; (29) Correctional Health Care Administrator ("CHCA") Huner; (30) RN Waidelich; (31) RN Barone; (32) RN Savage; and (33) Doctor Bazel.[2]  The Defendants are sued in their individual and official capacities. Mr. Gorrio's claims primarily arise from his placement in the Restricted Housing Unit ("RHU") at SCI Phoenix and the conditions on the RHU.  The gist of his claims is that prison officials "falsely imprisoned" him in the RHU and subjected him to "excessive force . . . in multiple separate and progressive occurrences."  Mr. Gorrio also alleges that prison officials "encouraged and endorsed a contracted 'fight club'" on M-unit in which inmates were encouraged to cause harm to one another for rewards.

I.      **Allegations Related to Placement in the Restricted Housing Unit**

The events giving rise to Mr. Gorrio's claims begin in February 2023.  Specifically, Mr. Gorrio alleges that on or about February 17, 2023, he was "escorted to A-unit and placed under investigation" after "institutional officers" searched his cell.[3]  Mr. Gorrio contends that the incident report used to justify this action reflected a "faulty incident date" and was "dismissed and rewritten on two separate occasions to justify [his] illicit placement and false imprisonment."  Although unclear, the Court understands Mr. Gorrio to be alleging that the circumstances used to justify his placement in administrative custody were later used to justify disciplinary sanctions and his related placement on the RHU.

---

[2]      At times in the body of the Complaint, Mr. Gorrio refers to assorted John Doe individuals as Defendants, but it is unclear how many "Doe" Defendants Mr. Gorrio intends to sue, if any, especially because he has not named any "Doe" Defendants in the caption of his Complaint as required by Federal Rule of Civil Procedure 10(a).  Rather, these "Doe" Defendants appear to be included as placeholders for groups of unknown individuals who may or may not have been involved in the claimed constitutional violations.

[3]      A-unit is where the RHU is located, but it is unclear whether Mr. Gorrio was in the RHU at this time.  The Complaint suggests that Mr. Gorrio may have initially been held in administrative custody followed by periods in disciplinary custody, but the specific dates and times are difficult to discern.

In that regard, Mr. Gorrio alleges that on or about April 3, 2023, he "was released from the investigation" but was issued "an illegitimate misconduct" based on unspecified disciplinary charges. Defendant Hearing Examiner Yodis found Mr. Gorrio guilty of the charged disciplinary offenses despite the fact that Mr. Gorrio had previously been held and then released from administrative custody in connection with the same alleged infractions. As a consequence of the disciplinary infraction, Examiner Yodis suspended Mr. Gorrio's "contact visits" for 180 days. Mr. Gorrio claims that Examiner Yodis disregarded institutional policies in finding him guilty.

It is unclear how long Mr. Gorrio was held in the RHU, but he appears to have been released at some point because he claims to have again been "illegitimately" escorted to the RHU on May 7, 2023 and held there based on "faulty misconduct charges." Mr. Gorrio asserts that this placement in the RHU violated his due process rights because the "original misconduct" underlying these unspecified charges was dismissed without prejudice and rewritten seven days later. Overall, Mr. Gorrio contends that he was held in the RHU "in solitary confinement in excess of (136) one hundred thirty-six days[,]" but the specific time periods during which he was held there are unclear.

## II.    Allegations Related to March 21, 2023 Medical Procedure

In a separate set of allegations, Mr. Gorrio asserts that he was taken to the medical department on March 21, 2023 in response to sick call requests and examined by Defendant Dr. Bazel. Dr. Bazel evaluated Mr. Gorrio and determined that he had glass lodged in his right ankle that required removal. Mr. Gorrio stated, "No, I do not want to have this operation completed here at the institution. You are not qualified to perform a surgery and it could result in an infection." Correctional Officer Keil and an unidentified John Doe officer responded, "you are getting the glass out if you like it or not" and then held Mr. Gorrio on the bed stating, "Mr. Gorrio, you don't

3

have a choice." Dr. Bazel held Mr. Gorrio's leg down with one hand while holding a scalpel in his other hand. Mr. Gorrio acquiesced to the procedure at that time because he believed he did not have a choice and "fear[ed] for his life and safety." As a result of this incident, Mr. Gorrio allegedly experienced night terrors that, on some occasions, caused him to wake up on the ground and lose continence.

### III.        Allegations Related to June 1, 2023 Use of Force

Mr. Gorrio also raises claims pertaining to an incident on June 1, 2023, presumably when he was in the RHU. On that date during mealtime, Mr. Gorrio asked Defendant Officer Barretto "what is up with my legal property, I have been waiting forever?" to which Barretto allegedly replied, "you aint ever getting your legal property pussy – this is what you get for filing grievances and lawsuits." Mr. Gorrio responded, "oh yes I am, I am taking my wicket hostage, now you need to go get a lieutenant," and used a towel to prevent his food aperture from closing. (*Id.*) Barretto presented his night stick, allegedly stated, "I'm going to Rodney King your ass!" and called over to the unidentified control officer, asking him to "open up AC1006 I have to fuck Mr. Gorrio up." Once the door was open, Barretto "began to use force on [Mr. Gorrio], striking him in the face and knocking him unconscious." When Mr. Gorrio regained consciousness, he was on the floor with blood on his lip, a lump on his cheek, and a lump on his forehead from where he fell head-first into the toilet.

Mr. Gorrio alleges that, pursuant to prison policy, unidentified correctional officers in the "chain-of-command" were contacted regarding his injuries and the possibility of a concussion, yet Mr. Gorrio claims he was never treated or assessed. Mr. Gorrio also claims that he filed sick call requests that went unanswered and that, although a night-time nurse reported his injuries, he did not receive medical attention at that time.

### IV.        Allegations Related to June 5, 2023 Suicide Attempt

On June 5, 2023, Mr. Gorrio "was escorted to the showers and at the time was feeling suicidal, to which he noticed unit officers . . . failed to provide remedy of any sort." Mr. Gorrio alleges that he requested a razor to shave, but instead swallowed the razor. He was "escorted to medical triage after informing officers of the suicide attempt." The officers at medical triage informed the "administration" and "in-coming escorting officers" of "the occurrence." Around this time, Officer Nesmith and Sergeant Rivera antagonized Mr. Gorrio by making remarks such as, "Mr. Gorrio, I hope that razor cuts you open and you die," and "I am going to make sure they leave that razor in your stomach so you can pay for your bullshit . . . hopefully with your life." Unidentified "escorting officers" arrived and took Mr. Gorrio to the "visiting strip" for a body scan, presumably to determine whether a razor was lodged inside of him, the result of which was "inconclusive or unfounded."

Mr. Gorrio was taken back to the medical department where the nursing staff gave him an initial suicide risk questionnaire in which he "indicated that he was suicidal, depressed, and planned to kill himself." Mr. Gorrio was then taken to a doctor's assessment room, where he saw a psychologist, who is not identified as a Defendant. Mr. Gorrio claims that although he reported being depressed and suicidal, they psychologist, "along with on-call psychiatrist and unit management, including [Defendant] Lieutenant Thompson ordered . . . Mr. Gorrio back to his housing quarters with a razor lodged in his stomach region and without any further medical or psychological treatment." Mr. Gorrio adds that he did not receive any follow up care on A-unit after this incident.

## V.      Allegations Related to the "Fight Club"

Mr. Gorrio also raises allegations about an alleged "fight club" that operated on M-unit, which appears to be a different unit from the RHU where Mr. Gorrio was previously housed.  The events giving rise to this set of claims begin on August 17, 2023, when Mr. Gorrio was in the yard with other inmates, and another inmate swung a lock on a rope, striking Mr. Gorrio in the hand and the head.  Mr. Gorrio alleges that he "was obligated to defend [himself]" because there were no officers in the yard area or monitoring the cameras even though the altercation allegedly lasted "several minutes."  Mr. Gorrio contends that he returned to the unit forty-five minutes later "with [visible] blunt trauma contusions and lacerations to the head."  He claims that the incident was "reported to the complacent unit officers" and that his requests for medical attention and placement in administrative custody were denied by unidentified "second shift (2-10) officers."

An unidentified officer allegedly stated, "this is the result of 'fight club,' tend to your own injuries."  Mr. Gorrio asserts that he did not understand what the officer meant but that when he again requested medical care and a change in placement, he received the same response.[4] Accordingly, Mr. Gorrio administered wound care and stitches to his head and wrapped his hand with the assistance of his cell mate.  Mr. Gorrio contends that "chain-of-command on the unit," including Unit Manager Wychunis, "completely disregarded their official duties for a period of two (2) days and continuously failed to administer medical care . . . ."  Mr. Gorrio further contends that he "filed request slip documentation" to Unite Manager Wychunis, but that Unit Manager Wychunis "failed to act reasonably or in a timely manner to the operations of the M-Unit 'fight club.'"

---

[4]      At times the Complaint refers to "exhibit(s) attached."  However, the Complaint was submitted without these exhibits.

Mr. Gorrio was allegedly informed about "fight club" by "multiple" unidentified officers on the unit. However, he specifically notes that Officer Shorter and a John Doe Officer told him that the "'ground rules' for 'fight club'" were:

> A. No Snitching; B. Fight to the death or til the other prisoner is not moving; C. No medical attention, tend to your own injuries; and D. the winner of each match will receive a $7,000 cashapp to a location of their choosing.

(*Id.*)

According to Mr. Gorrio, he took a homemade knife and master padlock on a rope to the yard one day for a "death match" with another inmate because he allegedly had no choice but to fight under the circumstances. He waited for his opponent and, when the particular inmate appeared, Mr. Gorrio engaged the fighting. Mr. Gorrio was stabbed in the head and fractured his left hand. After a few minutes, officers broke up the fight and took Mr. Gorrio and the other inmate to the medical department for care for their injuries. Mr. Gorrio was transported to hospital; when he returned to SCI Phoenix, he was housed on the medical unit for two days and then returned to the RHU "to serve disciplinary custody time."

## VI.      Mr. Gorrio's Claims

Based on the above allegations, Mr. Gorrio brings constitutional claims pursuant to 42 U.S.C. § 1983 as well as numerous claims under Pennsylvania law. Specifically, he purports to bring the following claims for relief: (1) deliberate indifference to safety; (2) "deliberate indifference to healthcare"; (3) medical malpractice; (4) "respondeat superior"; (5) failure to protect; (6) false imprisonment; (7) excessive use of force; (8) "retaliation for speech"; (9) "retaliation for legal action"; (10) "due process (objective)"; (11) "due process (substantive)"; (12) "conditions of confinement"; (13) "assault & battery"; (14) slander; (15) libel; (16) intentional infliction of emotional distress; (17) negligence; (18) "negligence per se"; (19) breach of contract;

7

(20) breach of fiduciary duties; (21) breach of the duty of good faith; (22) "reckless endangerment of another person"; and (23) negligent endangerment of another person.  Compl. at 25-31.  Mr. Gorrio seeks millions of dollars in damages.  *Id.* at 8, 32.

## LEGAL STANDARD

The Court grants Mr. Gorrio leave to proceed *in forma pauperis* because it appears that he is incapable of pre-paying the fees to commence this civil action.[5]  Because Mr. Gorrio is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.  As Mr. Gorrio is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

---

[5]    However, because Mr. Gorrio is a prisoner, he will be obligated to pay the $350 filing fee in installments. *See* 28 U.S.C. § 1915(b).

DISCUSSION

Mr. Gorrio brings constitutional claims pursuant to § 1983 as well as several state law claims. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). "Suits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).

First, a supervisor may be liable if he or she ""with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."[6] *Id.*

---

[6]      Official capacity claims are indistinguishable from claims against the governmental entity that employs the defendants. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). Thus, § 1983 claims against the individual defendants here—all of whom appear to be employed by the Department of Corrections—are really claims against the DOC, which is shielded from § 1983 suits by Eleventh

## I.   Severance of Claims

Mr. Gorrio's claims related to the allegedly forced medical procedure on March 21, 2023, and his claims related to the "fight club" on M-Unit are distinct from his remaining claims, which concern his placement in the RHU and, as best as the Court can discern, certain conditions in the RHU.  Federal Rule of Civil Procedure 18(a) states that "[a] party asserting a claim, . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."  Federal Rule of Civil Procedure 20 allows a plaintiff to join multiple defendants in one action if:  (a) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (b) "any question of law or fact common to all defendants will arise in the action."  "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'"  *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (*quoting United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

"But this application, however liberal, is not a license to join unrelated claims and defendants in one lawsuit."  *McKinney v. Prosecutor's Office*, No. 13-2553, 2014 WL 2574414, at *14 (D.N.J. June 4, 2014) (internal quotations omitted).  "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B

---

Amendment immunity and is not considered a "person" subject to liability under § 1983.  *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020) ("Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity."); *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of § 1983).  Accordingly, all claims asserted against the defendants in their official capacity will be dismissed with prejudice.  The Court will address Mr. Gorrio's damages claims against the defendants in their individual capacities below.

against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). "Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [results from combining numerous claims against numerous defendants in one suit] but also to ensure that prisoners pay the required filing fees" as required by the PLRA and to ensure that a prisoner is not circumventing the principles behind § 1915(g). *Id.*

To remedy a misjoinder, a Court may drop a party or sever any claims. Fed. R. Civ. P. 21. Rule 21 "give[s] district courts broad discretion in deciding whether to sever a case by way of severing parties or claims." *Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456, 467 (E.D. Pa. 2013). When analyzing severance, courts consider "convenience of the parties, avoiding prejudice, and promoting expedition and economy." *Id.* at 468 (internal quotations omitted). "Severance pursuant to Rule 21 essentially creates a separate case." *Id.*; *see also United States* ex rel. *LaCorte v. SmithKline Beecham Clinical Lab'ys, Inc.*, 149 F.3d 227, 231 (3d Cir. 1998) ("A severed claim proceeds as a discrete suit.").

Most of Mr. Gorrio's claims concern his placement in the RHU and the conditions in the RHU. However, he also brings unrelated claims against Dr. Bazel and Correctional Officer Keil based on a distinct incident on March 21, 2023 when he was forcibly subjected to a medical procedure to remove glass from his leg, as well as unrelated claims arising from events beginning in August 2023 predicated on the "fight club" allegedly operating on M-Unit, which the Complaint associates with Correctional Officer Shorter and Unit Manager Wychunis. These claims are based on separate events and are entirely distinct from each other and from the claims that remain in this lawsuit pertaining to the RHU. Accordingly, the Court will exercise its discretion under Rule 21 to sever the claims against Dr. Bazel and Officer Keil into a second lawsuit and to sever the claims against Officer Shorter and Unit Manager Wychunis into a third lawsuit. *See Thompson v.*

*Ferguson*, 849 F. App'x 33, 36 (3d Cir. 2021) (*per curiam*) ("Misjoinder of claims occurs when, among other things, the events that give rise to the plaintiff's claims do not stem from the same transaction."); *Smith v. Owens*, 625 F. App'x 924, 928 (11th Cir. 2015) (district court did not abuse its discretion in severing complaint that "alleged a variety of unrelated claims against different corrections officers, arising out of different events and occurring on different dates"); *McKinney*, 2014 WL 2574414, at *15 ("The courts[] . . . have frowned on prisoners' attempts to lump together their multifarious grievances about life in a single prison . . . .").

Because these lawsuits will be separate, Mr. Gorrio will be required to either pay the fees to proceed or, alternatively, file a motion for leave to proceed *in forma pauperis* with a copy of his prison account statement in each of the new lawsuits if he cannot afford to pay the fees up front. *See* 28 U.S.C. §§ 1914 & 1915; *see generally Mitchell v. Kallas*, 895 F.3d 492, 503 (7th Cir. 2018) ("Out of concern about unwieldy litigation and attempts to circumvent the PLRA's fee requirements, we have urged district courts and defendants to beware of 'scattershot' pleading strategies."). The Court will address Mr. Gorrio's remaining allegations predicated on his placement in and the conditions on the RHU below.[7]

## II.   Undeveloped and Unsupported Claims

Many of Mr. Gorrio's claims must be dismissed because they are undeveloped in that the factual allegations underlying the claims are vague, conclusory, or unclear and therefore legally insufficient to give rise to a plausible inference of liability. Mr. Gorrio's claims against several

---

[7]   As discussed below, Mr. Gorrio has failed to develop allegations against many of the named defendants, which has made it difficult to discern which events and claims with which they are associated. For purposes of judicial efficiency, the Court will address the claims against these defendants in the context of the lawsuit proceeding under the instant civil action number. Regarding the severed cases, the Court will only include defendants who are clearly associated with the events underlying the claims in each of the severed cases. Notably, Mr. Gorrio's failure to allege any basis for claims against the defendants or legal theories discussed in Section II of this Memorandum is fatal to his claims regardless of the lawsuit in which they are placed.

defendants fail because he has not raised any specific allegations against them explaining their personal involvement in the alleged constitutional or state law violations.   Specifically, the Complaint fails to allege any facts explaining how the following defendants were personally involved in the alleged violations of Mr. Gorrio's rights or how they otherwise caused him harm: (1) Superintendent Joseph Terra; (2) Corrections Officer Edwards; (3) Corrections Officer Rodgers; (4) Corrections Officer Johnson; (5) Corrections Officer II Green; (6) Corrections Officer II Webber; (7) Corrections Officer II Kirin; (8) Lt. Jolliff; (9) Lt. Hunter; (10) Captain Drusel; (11) Major Fitzgerald-Young; (12) Lt. Buggey; (13) Lt. Wade; (14) Lt. Hall; (15) Lt. Wright; (16) Lt. White; (17) Major Mascellino; (18) Deputy Superintendent Hensley; (19) Deputy Superintendent Sipple; (20) Deputy Superintendent Bradley; (21) Correctional Health Care Administrator ("CHCA") Huner; (22) RN Waidelich; (23) RN Barone; and (24) RN Savage.   Absent specific allegations about what each of these individuals did or did not do that violated Mr. Gorrio's rights or caused him harm, Mr. Gorrio cannot state a claim against them.[8]

To the extent that Mr. Gorrio has, at times, collectively referred to prison officials, unit staff, or correctional officers without specifying what each of the particular named defendants did or did not do that violated his rights, pleading in such a manner is insufficient to put the defendants on notice of the conduct with which they are charged and does not state a plausible claim.  *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's collective use of the word "Defendants" failed to adequately plead which specific defendant

---

[8]     Additionally, to the extent Mr. Gorrio intends to assert claims against unidentified John Doe defendants, *see supra* n.2, it is unclear how many of these individuals he intends to name and whether the allegations against these defendants throughout the Complaint pertain to the same or different individuals. As a result, it is difficult to discern whether Mr. Gorrio has alleged each of the Doe Defendants' personal involvement in the events underlying his claims. Mr. Gorrio therefore has not stated a claim against these defendants, to the extent he was attempting to do so, as a result of the confused and generalized manner in which he has raised allegations against them.

engaged in the specific conduct alleged by the plaintiff); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). Furthermore, Mr. Gorrio's conclusory assertions that large groups of these defendants are liable to him or generally violated his rights by, for example, acting with deliberate indifference in an unspecified manner, is insufficient to state a claim. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original).

Additionally, Mr. Gorrio pursues numerous claims for relief, but many of his legal theories are baseless, vague, irrelevant, or unsupported by the events described in the Complaint. For instance, he asserts "slander" and "libel" claims, but he does not describe any false statements published by the defendants that would give rise to a defamation claim. *See generally Graboff v. Colleran Firm*, 744 F.3d 128, 135 (3d Cir. 2014) (describing elements of defamation under Pennsylvania law).

Nor has Mr. Gorrio alleged any basis at all for his breach of contract, breach of fiduciary duties, or breach of the duty of good faith claims because he has not alleged any relevant contractual or fiduciary relationships. *See Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) ("It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages"); *Snyder v. Crusader Servicing Corp.*, 231 A.3d 20, 31 (Pa. Super. Ct. 2020) ("To prevail on [a] breach of fiduciary duty claims, [a plaintiff is] required to prove the following elements: the existence of a fiduciary relationship between [the parties], that [the defendant] negligently or

14

intentionally failed to act in good faith and solely for [the plaintiff's] benefit, and that [the plaintiff] suffered an injury caused by [the defendant's] breach of his fiduciary duty."); *see also Short v. Adams*, No. 17-4544, 2019 WL 331679, at *9 (E.D. Pa. Jan. 25, 2019) (dismissing state law claims based on conditions at a halfway house, including claims for breach of contract and breach of fiduciary duty, where plaintiff failed to allege the existence of a contract or fiduciary relationship); *CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F. Supp. 2d 354, 369 (E.D. Pa. 2009) ("In order to plead a cause of action for breach of the covenant of good faith, whether it is an express or implied covenant, a plaintiff must properly plead the elements of a claim of breach of contract.").

Mr. Gorrio's claims for intentional infliction of emotional distress also fail because it is not clear what they are based on and, in any event, he has not alleged sufficiently outrageous conduct to state a basis for this type of claim. *See Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (only conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society" meets this standard); *Short*, 2019 WL 331679, at *9 & n.9 (plaintiff failed to state a claim for intentional infliction of emotional distress based on conditions of confinement because he failed to allege outrageous conduct).

Mr. Gorrio's claims for negligent and reckless endangerment further appear to be improperly based on criminal statutes that do not support a civil cause of action. *See Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 351 (E.D. Pa. 2022) ("[T]here is no civil remedy recognized in Pennsylvania for the crime of reckless endangerment."). He has not alleged any basis for a "negligence per se" claim because he has not alleged a relevant underlying statutory scheme and any such claim would in any event be subsumed by his standard negligence claim. *See id.* at 346

(explaining that "[i]If a plaintiff alleges negligence and negligence per se separately, courts within the Third Circuit routinely dismiss the negligence per se claim as subsumed within the standard negligence claim." (internal quotations omitted)).

Mr. Gorrio also appears to assert a "respondeat superior" claim based on alleged constitutional violations even though "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676.

The manner in which Mr. Gorrio has pled his claims further confuses their nature. The bases for his listed legal claims are difficult to understand because he associates these claims with numerous defendants against whom he has not alleged any specific factual matter. Further, many of his claims cite to constitutional amendments that appear irrelevant to the underlying factual matter or to the Pennsylvania constitution, which does not give rise to a damages remedy. *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution"); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution."). Because of the confusing and unclear manner in which Mr. Gorrio has pled his claims, the Court will simply "apply the applicable law, irrespective of whether [the] pro se litigant has mentioned it by name" to determine whether Mr. Gorrio has adequately pled a claim against any of the remaining defendants based on his placement in the RHU and conditions to which he was subjected there. *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999).

### III.    Placement in the RHU

Mr. Gorrio brings constitutional claims against Examiner Yodis based on his placement in the RHU. Convicted and sentenced prisoners have no inherent constitutional right to any particular security classification or to any particular housing assignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) ("We have held that the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."). Rather, in the prison context, "[d]ue process protection for a state created liberty interest is . . . limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (quoting *Sandin*, 515 U.S. at 486)); *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 171 (3d Cir. 2011) ("[I]nmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest."). In deciding whether conditions are atypical and significant for purposes of establishing a liberty interest, a court must consider "(1) the duration of the challenged conditions; and (2) whether the conditions overall imposed a significant hardship in relation to the ordinary incidents of prison life." *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 560 (3d Cir. 2017). In determining whether a hardship is atypical or significant, the relevant comparator is the general population. *Id.* at 564.

Mr. Gorrio alleges that he was improperly held on the RHU for over 136 days "in solitary confinement." However, the manner in which Mr. Gorrio's Complaint is pled suggests that he

was held in the RHU over several different stretches, so it is unclear to what periods of time the 136 days mentioned in the Complaint refers. Furthermore, although Mr. Gorrio generally alleges that he was held in "solitary confinement," he does not elaborate on this allegation, and it is unclear what Mr. Gorrio means by using this phrase in terms of the conditions in which he was held.

Additionally, the Complaint does not provide any allegations about the conditions on the RHU that would establish the extent to which it differs from the conditions in general population. In sum, the Complaint as pled does not give rise to a due process claim based on Mr. Gorrio's placement in the RHU. *See Mutschler v. Tritt*, 685 F. App'x 167, 170 (3d Cir. 2017) (*per curiam*) ("[W]e agree that Mutschler's complaint [which alleged that he was held in disciplinary segregation for 180 days] did not make out a due process claim, as the complaint failed to include facts that suggest that he experienced disciplinary sanctions that involved a protected liberty interest."); *Wilkerson v. Goodwin*, 774 F.3d 845, 855 (5th Cir. 2014) ("[T]he duration in segregated confinement that courts have found does not give rise to a liberty interest ranges up to two and one-half years."); *Griffin*, 112 F.3d at 708 (holding that "exposure to the conditions of administrative custody for periods as long as 15 months falls within the expected parameters of the sentence imposed [. . .] by a court of law" and does not constitute a due process violation (quotation omitted)).

Nor is there any other basis for a constitutional claim based on Mr. Gorrio's placement in the RHU. *See Hudson v. Palmer*, 468 U.S. 517, 536 (1984) ("[T]he Fourth Amendment has no applicability to a prison cell."); *Griffin*, 112 F.3d 703, 709 (no Eighth Amendment violation where plaintiff's confinement in administrative custody did not "involve a deprivation of any basic human need"); *see also Williams v. Armstrong*, 566 F. App'x 106, 109 (3d Cir. 2014) (*per curiam*) (inmate failed to state an Eighth Amendment claims where "he [did] not allege that he was denied

18

any of life's necessities, and the duration of his time in the RHU was 112 days"); *Fantone v. Herbik*, 528 F. App'x 123, 129 (3d Cir. 2013) (*per curiam*) (prisoner's stint in isolation did not violate substantive due process rights because it was not conscience-shocking); *Laufgas v. Speziale*, No. 04-1697, 2006 WL 2528009, at *9 (D.N.J. Aug. 31, 2006) ("[A] prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983."). Accordingly, all claims based on Mr. Gorrio's placement in the RHU must be dismissed.[9]

### IV.   June 1, 2023 Use of Force Incident

Mr. Gorrio brings claims based on Officer Barretto's use of force on June 1, 2023. The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). "Force that is used 'maliciously and sadistically for the very purpose of causing harm' violates the Eighth Amendment." *Young v. Martin*, 801 F.3d 172, 180 (3d Cir. 2015) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).

The factors used to determine whether the force applied was excessive include: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). The inquiry is driven "by the extent of the force and the circumstances in which it is applied; not by the resulting injuries." *Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002).

---

[9]    The Court also cannot discern a plausible basis for a claim under Pennsylvania law based on these events.

Mr. Gorrio alleges that on June 1, 2023, after exchanging words with Officer Barretto, Officer Barretto directed another officer to open his cell door so he could "fuck Mr. Gorrio up" and hit Mr. Gorrio in the face until he lost consciousness.   When Mr. Gorrio regained consciousness, he was on the floor with blood on his lip, a lump on his cheek, and a lump on his forehead from where he fell head-first into the toilet.  These allegations are sufficient to state an excessive force claim against Officer Barretto.[10]

Mr. Gorrio also raises state tort claims for assault and battery related to this incident. "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (quoting *Cohen v. Lit Bros.*, 70 A.2d 419, 421 (Pa. 1950)); *see also C.C.H. v. Phila. Phillies, Inc.*, 940 A.2d 336, 340 n.4 (Pa. 2008) (a battery is harmful or offensive contact with another person).   The allegations supporting these state law claims are the same as those supporting Mr. Gorrio's excessive force claim; therefore, the Court declines to dismiss these claims at this stage of the litigation.  *See Short*, 2019 WL 4573254, at *5 (declining to dismiss state law claims of assault and battery where the claims were based on the same allegations that supported the excessive force claim which was permitted to proceed).

It appears that Mr. Gorrio also intends to bring a First Amendment retaliation claim against Officer Barretto.  To state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse

---

[10]     To the extent the Complaint generally implies that other officers subjected Mr. Gorrio to improper force, Mr. Gorrio's allegations are far too vague and undeveloped to sustain any other excessive force claim.

action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). A prisoner's filing of a grievance or lawsuit constitutes constitutionally protected conduct. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *Watson*, 834 F.3d at 422.

Mr. Gorrio alleges that before Officer Barretto used force on him, they had a conversation during which Mr. Gorrio asked Defendant Officer Barretto "what is up with my legal property, I have been waiting forever?" to which Barretto allegedly replied, "you aint ever getting your legal property pussy – this is what you get for filing grievances and lawsuits." Mr. Gorrio responded by "taking [his] wicket hostage," to which Barretto responded by using force on him. Taking as true Mr. Gorrio's allegations about his conversation with Barretto, which support an inference that Barretto had a motive to retaliate against Mr. Gorrio for filing grievances and lawsuits, and considering how close in time the conversation was to Barretto's use of force, the Court will permit the retaliation claim against Barretto to proceed at this time.

## V.    Deliberate Indifference to Medical Needs Including June 5, 2023 Suicide Attempt

Mr. Gorrio asserts claims for deliberate indifference to his medical needs and mental health needs, including his suicidal tendencies. To state a constitutional claim in this context, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for

medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

"A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). "[A] particular vulnerability to suicide qualifies as a serious medical need." *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017). Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). "A deliberate indifference to a serious medical need claim can apply in various inmate medical situations, including failing to provide adequate mental health services." *DeJesus v. Delaware through Delaware Dep't of Corr.*, 833 F. App'x 936, 940 (3d Cir. 2020).

However, allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with . . . deliberate indifference." *Id.* at 236. Furthermore, "[w]here a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*).

Mr. Gorrio alleges that on June 5, 2023, after he swallowed a razor because he felt suicidal and while he was awaiting medical care, Officer Nesmith and Sergeant Rivera antagonized Mr. Gorrio by making remarks such as, "Mr. Gorrio, I hope that razor cuts you open and you die," and "I am going to make sure they leave that razor in your stomach so you can pay for your bullshit . . . hopefully with your life." In the context of vulnerability to suicide, taunting remarks such as these could support an inference of deliberate indifference. *See Lisle v. Welborn*, 933 F.3d 705, 717 (7th Cir. 2019) ("Lisle alleges that South was deliberately indifferent to his risk of suicide by taunting him for being unsuccessful and actually encouraging Lisle to kill himself while he was in the infirmary on suicide watch. Assuming Lisle's account is true, as we must, South's statements could be deemed cruel infliction of mental pain and deliberate indifference to his risk of suicide, making summary judgment improper.").

Mr. Gorrio further alleges that, although he reported being depressed and suicidal, prison officials, including Lieutenant Thompson, ordered him "back to his housing quarters with a razor lodged in his stomach region and without any further medical or psychological treatment. Reading Mr. Gorrio's allegations liberally and taken together, the Court will permit him to proceed on his deliberate indifference claims against Officer Nesmith, Sergeant Rivera and Lieutenant Thompson based on the events of June 5, 2023 related to the suicide attempt. *See Hill v. Wetzel*, No. 21-3009, 2022 WL 5422329, at *3 (3d Cir. Oct. 7, 2022) (inmate who did not receive treatment for suicidality and was encouraged "to kill himself" stated deliberate indifference claim). To the extent Mr. Gorrio is pursuing negligence claims against these three defendants based on the same events underlying his deliberate indifference claims, he may proceed at this time on those claims.

However, to the extent Mr. Gorrio intended to bring claims against any other defendants based on this incident or based on any absence of follow up care, any such claims are dismissed

because they are too vague and undeveloped to proceed.  The Court also understands Mr. Gorrio to be bringing claims for deliberate indifference to his serious medical needs after the June 1, 2023 incident with Officer Barretto, as well as related tort claims.  These allegations, however, are undeveloped and are not directed at any particular defendant or defendants.  Accordingly, Mr. Gorrio has not stated a claim based on any lack of or deficiency in medical care in the RHU apart from those identified above.

CONCLUSION

For the foregoing reasons, the Court will sever Mr. Gorrio's claims based on the March 21, 2023 forced surgery and the "fight club" on M-unit into two separate lawsuits and will limit this case to Mr. Gorrio's allegations concerning his placement in and the conditions on the RHU and his suicide attempt.  Regarding Mr. Gorrio's claims based on his placement in and conditions on the RHU, all of his claims are dismissed for the above reasons with the exception of:  (a) Mr. Gorrio's claims against Officer Barretto for excessive force, retaliation, assault, and battery based on the June 1, 2023 use of force incident; and (b) Mr. Gorrio's claims against Officer Nesmith, Sergeant Rivera, and Lieutenant Thompson for deliberate indifference and negligence based on the events related to the June 5, 2023 suicide attempt.

Cognizant of Mr. Gorrio's *pro se* status, the Court will grant him an opportunity to file an amended complaint reasserting his claims pertaining to the RHU.  In the alternative, Mr. Gorrio may advise the Court that he seeks to proceed in this case only on the claims that pass statutory screening pertaining to his placement in and conditions on the RHU and his claims related to his suicide attempt.  In the event Mr. Gorrio returns with an amended complaint, the Court will screen the amended complaint pursuant to 28 U.S.C. § 1915(e), as it has done with Mr. Gorrio's initial Complaint, and will also determine whether further severance of claims is appropriate.

An appropriate Order follows, which in part provides further guidance to Mr. Gorrio about his options for proceeding.

BY THE COURT:

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**