**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL GORRIO** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 23-4366** |
| | : | |
| **CO KEIL, *et al.*** | : | |

**McHUGH, J.** **September 12, 2025**

**MEMORANDUM**

This is a civil rights action brought by Michael Gorrio, a pro se litigant, against various correctional officers at SCI Phoenix, where he was incarcerated during the events at issue.[1] Mr. Gorrio's claims were screened and severed at an earlier stage of litigation by my predecessor, Judge Pratter, leaving three incidents at the heart of this action: two involving medical care, and one involving use of force. Gorrio raises a plethora of claims arising under both 28 U.S.C. § 1983 and state law. Defendant Officers Keil, Barretto, Nesmith, Rivera, and Thompson ("the Commonwealth Defendants") have moved to dismiss.[2]

Because I am persuaded that Mr. Gorrio did not properly exhaust the grievance process under the PLRA, his federal claims will be dismissed. And although most of Plaintiff's state law claims are barred by sovereign immunity, Gorrio sufficiently pleads that Officer Barretto engaged in intentional torts beyond the scope of his employment, allowing those claims to proceed to discovery.

[1] Gorrio has since been transferred to SCI Pine Grove.

[2] The sole remaining Defendant, Dr. Saeed Bazel, is not a party to this Motion and has filed a separate Motion to Dismiss on other grounds. ECF 44.

## I. Relevant Background

### A. Mr. Gorrio's Testimony

#### *1. The March 21 Incident*

Plaintiff alleges that on March 21, 2023, he was brought to the medical department in response to his sick call requests, where Dr. Bazel determined that there was glass lodged in Plaintiff's right ankle, requiring removal. Compl. ¶ 25, ECF 2.[3] Plaintiff contends that he firmly objected to removal of the glass because he did not believe that Dr. Bazel was qualified and he feared the procedure would result in infection. *Id.* Officer Keil purportedly responded "you are getting the glass out of you like it or not," while Dr. Bazel held Plaintiff's leg down and performed the procedure. *Id.* Plaintiff avers that he now experiences resultant night terrors that cause him to "wind up on the ground and lose continence." *Id.* ¶ 26.

Mr. Gorrio submitted a timely grievance about this incident on April 3, 2023 and appealed the Facility Grievance Coordinator's Response to the Facility Manager, thereby completing the first two steps of the grievance process. Orlando Dec., ¶ 12, ECF 38-1; Grievance 10272769, ECF 38-2 ("Glass Foot Grievance"). Both the Facility Grievance Coordinator and the Facility Manager denied Plaintiff's grievance. Orlando Dec., ¶¶ 13, 14. Plaintiff then requested an extension of time to submit an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") because he was temporarily confined to the Restrictive Housing Unit ("RHU"), but SOIGA denied the request because RHU confinement is not a valid reason for an extension. *Id.* ¶ 15. And although Plaintiff ultimately appealed the Facility Manager's decision, the appeal was not

[3] In its September 9, 2024 Court Order, this Court determined that Plaintiff's Amended Complaint was stricken because it was filed without leave and in violation of a previous Court Order. *See* ECF 19, ¶ 2. As such, I rely upon Plaintiff's original complaint, docketed at ECF 2.

postmarked until June 28, fifteen days after his deadline to postmark his appeal. *Id.* ¶ 16; Glass Foot Grievance at 2.[4] On August 10, SOIGA dismissed Plaintiff's appeal for failure to abide by the timing requirements enumerated in DC-ADM 804 § 2(B)(1)(b).

*2. The June 1 Incident*

Separately, Plaintiff claims that Officer Barretto used excessive force against him on June 1, 2023. Compl. ¶ 21-22. Mr. Gorrio alleges that during mealtime, he asked Officer Barretto about his legal property. *Id.* ¶ 21. Officer Barretto purportedly responded that Gorrio would never get his legal property due to his filing of grievances and lawsuits, prompting Gorrio to wrap his towel around the food aperture to jam its closure. *Id.* Plaintiff alleges that Officer Barretto then took out his night stick, stating "I am going to Rodney King your ass," and called over control radio to open Plaintiff's cell. *Id.* ¶ 23. Gorrio avers that although Officer Barretto put his baton away, he then struck Plaintiff in the face, knocking him unconscious. *Id.* Plaintiff states that when he returned to consciousness, he woke up on the floor with "blood on his lip, a lump on his check, and a lump on his forehead from falling head-first into the toilet." *Id.* Plaintiff alleges that he made sick call requests "to no avail" and that the night nurse reported visible injuries, to which medical and security staff never responded. *Id.* ¶ 24.

Plaintiff properly filed a grievance on June 4, 2023, and completed the first two steps of the grievance process by timely submitting his grievance and appealing the Facility Grievance Coordinator's denial to the Facility Manager. Orlando Dec. ¶¶ 17, 20. But at the third and final step, in appealing the Facility Manager's denial to SOIGA, Plaintiff failed to include any reasons for his appeal. *Id.* ¶ 21; *see also* DC-ADM 804 § 2(B)(1)(e)(5) (explaining that each appeal must

[4] Page numbers reflect pagination designated by the ECF system.

"contain reason(s) for appealing the Facility Manager/designee's decision"). SOIGA denied the appeal for failure to follow this procedure. Orlando Dec. ¶ 21.

*3. The June 5 Incident*

Finally, Plaintiff asserts that in a third, distinct event on June 5, 2023, he informed staff that he was feeling suicidal as he was being escorted to the showers, and that the officers failed to respond. *Id.* ¶ 27. Plaintiff avers that he then requested a razor to shave, but instead broke open the razor and swallowed it. *Id.* Upon informing officers that he had purportedly swallowed the razor, Mr. Gorrio was escorted to medical triage, where he contends that Officer Nesmith and Sergeant Rivera began antagonizing him and making "heinous remarks," such as "Gorrio, I hope that razor cuts you open and you die." *Id.* ¶ 28. Gorrio contends that he was then escorted to the visiting strip where a body scan returned results reading "inconclusive and unfounded."[5] *Id.* ¶ 29. Gorrio claims he filled out a suicide risk questionnaire with nursing staff, where he indicated that he was "suicidal, depressed, and planned to kill himself." *Id.* ¶ 30. Plaintiff finally alleges that he was brought to a doctor's assessment room where he repeated that he was suicidal. But the psychologist, psychiatrist, unit management, and Lieutenant Thompson ordered Gorrio back to his unit, allegedly with a razor still in his stomach, and without further follow up. *Id.*

Accordingly, Gorrio submitted a grievance on June 7, 2023 related to his alleged suicide attempt two days prior. Orlando Dec. ¶ 22. But the Facility Grievance Coordinator rejected Plaintiff's Grievance on June 12 because it contained information about multiple events, each of which must be submitted separately, and because it was unclear as to whom Gorrio was grieving. *Id.* ¶ 23. Plaintiff resubmitted his grievance on June 26, which the Facilities Grievance

[5] Gorrio characterizes the body scan he received as "make-shift" and "fraudulent." Compl. ¶ 29.

Coordinator denied as untimely, a decision upheld on appeal by the Facility Manager.[6] *Id.* ¶¶ 24-26. Gorrio did not appeal the Facility Manager's decision to SOIGA. *Id.* ¶ 27.

**B. Mr. Gorrio's Claims**

Plaintiff raises many causes of action against the Commonwealth Defendants under federal and state law broadly, without tying any specific incident to any of his asserted causes of action. Specifically, Plaintiff argues that the following amount to violations of his Fifth, Eighth, or Fourteenth Amendment rights, and thus entitle him to relief under Section 1983: deliberate indifference to safety, deliberate indifference to healthcare, medical malpractice, respondeat superior, failure to protect, false imprisonment, excessive use of force, retaliation, due process, and conditions of confinement. Compl. ¶¶ 38-49. He also asserts that the following are violations of the state tort claims act of the Pennsylvania Constitution: assault and battery by Officers Keil and Barretto, and intentional infliction of emotional distress, negligence, slander, libel, negligence per se, breach of contract, breach of fiduciary duty, breach of duty of good faith, reckless endangerment of another, and negligent endangerment of another, each against all Defendants. *Id.* ¶¶ 50-60. Plaintiff seeks compensatory and punitive damages for his "physical, psychological, and emotional injuries sustained by the incidents," and brings his claims against each Defendant in both their individual and official capacities. *Id.* at 32.

In Judge Pratter's earlier order and memorandum, the case was screened to narrow the focus to the following claims: (1) "Plaintiff's claims against Dr. Bazel and Correctional Officer

[6] Pursuant to DC-ADM 804 § 1(A)(20), Plaintiff was required to resubmit his corrected Grievance by June 20, making his June 26 filing untimely.

Keil based on the allegedly forced medical procedure on March 21, 2023,"[7] (2) "Plaintiff's claims against Officer Barretto for excessive force, retaliation, assault, and battery, based on the June 1, 2023 use of force incident," and (3) "Plaintiff's claims against Officer Nesmith, Sergeant Rivera, and Lieutenant Thompson for deliberate indifference and negligence, based on the events related to the June 5, 2023 suicide attempt." ECF 19 (discussing ECFs 6, 7). To summarize, following screening, the only surviving claims arising under federal law in this action are excessive force, retaliation, and deliberate indifference, and the only surviving state law claims are assault, battery, and negligence.[8]

On July 2, 2025, I provided notice to both parties that I would consider the question of exhaustion in my role as fact finder, and convert the motion to dismiss into a motion for summary judgment on the limited question of whether Plaintiff exhausted his administrative remedies as required by his federal claims. *Id.*[9] Neither party responded.

## II. Standard of Review

Motions to dismiss are typically governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Plaintiff's state law claims are controlled by this standard. Because Mr. Gorrio is pro se, the Court construes his allegations

---

[7] It is unclear which causes of action Plaintiff links to the March 21 incident. But liberally construing Plaintiff's Complaint, I look to paragraph 26, where Plaintiff describes this incident. There, he specifically describes the incident as "assault and battery" and "excessive use of force." I therefore accept these causes of action as those associated with the March 21 incident.

[8] In his Complaint, Gorrio clearly states the basis under which he brings each cause of action, some claims arising under only federal law, only state law, or both. I adopt Mr. Gorrio's classification of his own claims as arising under state versus federal law.

[9] Upon notice that Mr. Gorrio's notice was delivered to the wrong address, the Court re-sent the Order to the proper address on July 14, 2025. *See* ECF 43.

liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (internal quotation omitted).

Pursuant to *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018), I gave notice to the parties that I would convert the motion on the limited question of exhaustion into a motion for summary judgment. Plaintiff's federal claims are therefore governed by the summary judgment standard set forth by Fed. R. Civ. P. 56(a), as amplified by *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III. Discussion

Defendants argue that because Plaintiff failed to fully exhaust administrative remedies for each of the incidents at issue, his § 1983 claims should be dismissed. Further, they argue that remaining state law claims are barred by sovereign immunity. I will address these arguments in turn.

### A. Exhaustion Requirement Under the PLRA

The Prison Litigation Reform Act of 1995 ("PLRA") prevents incarcerated individuals from filing federal lawsuits regarding prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007). Proper exhaustion requires such an individual to "complete the administrative review process" in compliance with all applicable procedural rules prior to filing suit, including compliance with any grievance deadlines. *See Woodford*, 548 U.S. at 83-84, 88 (holding that an incarcerated individual cannot satisfy the PLRA's exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal). Exhaustion is mandatory under the PLRA, *Ross v. Blake*, 578 U.S. 632, 638 (2016), and applies to any suits about prison life, "whether they involve general circumstances or particular

episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). As "a non-jurisdictional prerequisite" to an incarcerated individual bringing suit, exhaustion therefore "constitutes a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time." *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018) (citation and internal quotation omitted); *see also Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013) (holding that "exhaustion constitutes a preliminary issue for which no right to a jury trial exists").

Defendants must establish that Gorrio failed to exhaust because exhaustion is an affirmative defense. *Small*, 278 F.3d at 268. If the defendant has "established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *Rinaldi*, 904 F.3d at 268. While exhaustion is mandatory, prisoners need only exhaust "available" remedies. Administrative remedies are "unavailable" in three circumstances: (1) when the administrative process operates as a simple dead end, (2) when it is "so opaque that it becomes, practically speaking, incapable of use," or (3) when prison administrators thwart individuals from using the grievance process "through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44. This third category includes any attempt by a prison official to inhibit use of the grievance process "through serious threats of retaliation and bodily harm." *Rinaldi*, 904 F.3d at 267.

Under the Pennsylvania Department of Corrections Official Inmate Grievance System, there is a three-step process that an individual must fully and properly follow in order to exhaust their administrative remedies under the PLRA. Pursuant to DC-ADM 804, an inmate is first required to present his grievance to the Facility Grievance Coordinator for initial review within fifteen days after the events upon which the grievance is based. *Rice v. Lair*, No. 21-5261, 2023

WL 5243409, *3 (E.D. Pa. Aug. 15, 2023). Second, the inmate is required to appeal an adverse determination by the Facility Grievance Coordinator to the Facility Manager. *Id.* In the third step, the inmate must appeal to SOIGA. *Id.*; *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004); *Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2000), *aff'd*, 532 U.S. 731 (2001).

**B. Defendants Have Established a Failure to Exhaust as to Plaintiff's § 1983 Claims**

The record is clear that Plaintiff failed to exhaust the administrative process for each of his grievances. And because Plaintiff does not show, or even allege, that the grievance process was somehow unavailable to him or otherwise lacking credibility, his federal claims fail as a matter of law.

*1. Plaintiff did not exhaust each of his claims*

Plaintiff is no stranger to the prison grievance system. As discussed above, Mr. Gorrio properly executed the first two steps of the administrative process in each of his cases by timely filing an initial grievance, receiving a decision from the Facility Grievance Coordinator, and appealing that decision to the Facility Manager. But in each instance there was a drop off where Plaintiff failed to properly pursue each of his claims to completion.

For his March 21 Grievance, Plaintiff requested an extension to file his final appeal to SOIGA, but that extension was denied, making Plaintiff's ultimate appeal untimely. For his June 1 Grievance, Plaintiff declined to explain the reasons for his appeal in his submission to SOIGA, again failing to fully adhere to procedure. Finally, in his June 5 Grievance, Plaintiff failed to timely resubmit his Grievance when it was denied for lack of specificity. And while he appealed the denial to the Facility Manager, he did not ultimately appeal the Facility Manager's decision to SOIGA.

Defendants have therefore established that Plaintiff's Grievances in this case are unfortunately all unexhausted and procedurally defaulted.

*2. Plaintiff provides no basis to excuse his lack of exhaustion*

At no point does Gorrio assert that the administrative process was unavailable to him. From 2013 to 2023, Plaintiff filed approximately 138 grievances – many of which were responded to and appealed, including those in this action. His frequent use of the grievance process belies any inference that the administrative process operates as a dead end or that it was so opaque as to prevent his use. Further, although the June 1 incident involves an officer purportedly chastising Gorrio for his reliance on the grievance system, Mr. Gorrio's frequent filings demonstrate that he was not effectively deterred from attempting to vindicate his rights.

Nor does Mr. Gorrio allege that the grievance collection system at the prison was defunct or untrustworthy. In its Motion, the Commonwealth produced the grievance file for each of the events at issue, as well as an affidavit explaining the Prison's systematic approach to receiving, capturing, and responding to grievances. Although Gorrio did file a response in opposition to the Motion, he does not challenge the accuracy of the file or pose any other factual challenge to the assertion that he failed to properly exhaust. Nor does Plaintiff contend that he filed grievances that were not captured by the Commonwealth's grievance processing system.[10] Moreover, the

[10] Neither party supplemented their submissions in light of the Court's *Paladino* notice, explicitly inviting any additional information to support or rebut my fact finding on the credibility of the grievance recordkeeping system. As such, Gorrio was invited to contest the Commonwealth's representation that he failed to exhaust but declined to do so. Mr. Gorrio's silence on this point amidst his otherwise robust advocacy further supports my finding that Gorrio failed to exhaust, as accurately captured by the Commonwealth's representations.

facts he does assert, that his items were misplaced a year following the grievances at issue, even if true, do not undercut Gorrio's failure to exhaust as a matter of law.

Absent any evidence that Plaintiff filed grievances that were somehow *not* captured, or any reason to believe that Mr. Gorrio lacked meaningful access to appropriate administrative remedies, I find no basis on which to excuse Gorrio's failure to exhaust each of the grievances at issue here. And because Plaintiff's federal claims may only proceed after proper exhaustion of available administrative processes, summary judgment on his Section 1983 claims of excessive force, retaliation, and deliberate indifference must be granted.[11]

**C. Plaintiff's State Law Claims**

The only remaining state law claims in this suit are (1) Plaintiff's claims related to the March 21 medical procedure, which Gorrio formulates as a claim for assault and battery, (2) assault and battery related to the June 1 incident, and (3) negligence related to the June 5 incident.[12] For the reasons that follow, Plaintiff's assault claims related to the medical procedure and his swallowing of the razor are barred by sovereign immunity, but Plaintiff plausibly pleads that Officer Barretto acted beyond the scope of his employment, allowing the June 1 claims to proceed.

Under Pennsylvania law, "the Commonwealth, its agencies and employees enjoy broad immunity from most state-law tort claims," including claims alleging infliction of intentional torts.

---

[11] Pennsylvania's PLRA does not contain an exhaustion requirement comparable to that in the federal PLRA. Plaintiff's state law claims are thus unaffected by Gorrio's failure to exhaust. *See Paluch v. Palakovich*, 84 A.3d 1109, 1113 (Pa. Commw. Ct. 2014).

[12] Although Judge Pratter's screening memorandum also allowed Plaintiff's claims of deliberate indifference, retaliation, and excessive use of force to proceed, Plaintiff solely asserts these causes of action under the Eighth Amendment, not under state law. As such, these causes of action were improperly exhausted for the purposes of this case, leaving only Plaintiff's claims of assault, battery, and negligence, which he pleads under the Pennsylvania State Constitution.

*Boucher v. Lupacchini*, No. 19-2106, 2021 WL 11096471, at *9 (M.D. Pa. Mar. 1, 2021) (discussing 1 Pa. C.S. § 2310); *see also Ardo v. Pagan*, 652 F.Supp.3d 545, 565 (E.D. Pa. 2023); *Luck v. Asbury*, No. 12-0087, 2013 WL 433536, at *4 (M.D. Pa. Feb. 5, 2013) (collecting cases finding that assault and battery were intentional torts barred by sovereign immunity). The doctrine of sovereign immunity, codified at 42 Pa.C.S. § 8521, protects the Commonwealth and its employees from suit "unless the cause of action falls within one of several statutory exceptions, or the individual's conduct falls outside the scope of his employment." *Wesley v. Hollis*, No. 03-3130, 2007 WL 1655483, at *14 (E.D. Pa. June 6, 2007) (citing *Savage v. Judge*, No. 05-2551, 2007 WL 29283, at *5 (E.D. Pa. Jan. 2, 2006)). There are only ten specific circumstances wherein the Commonwealth has waived its immunity, none of which are applicable to this case. *See* 42 Pa. C.S. § 8522(b).[13]

Because none of the waivers to sovereign immunity are applicable, the dispositive question becomes whether each Defendant was acting within the scope of his duties during each of Gorrio's alleged incidents. If so, the Court must dismiss the claim. To fall within the scope of one's employment, an officer's conduct must (1) occur substantially within the authorized time and

[13] The ten exceptions are (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids or vaccines; (10) sexual abuse "if the injuries to the plaintiff were caused by actions or omissions of the Commonwealth party which constitute negligence." 42 Pa.C.S. § 8522(b)(1)-(10).

Plaintiff makes it clear that as to the moving defendants here, he is not advancing a claim of medical malpractice. He has also named as a defendant Dr. Saeed Bazel, who is not a party to this motion, and who has separately moved to dismiss on other grounds. Plaintiff is cautioned that any state law medical claim may also be vulnerable to dismissal because he has not filed a certificate of merit as required by Pa. R. Civ. P. 1042.3(a), which the Court of Appeals has held applies in federal courts. *Schmigel v. Uchal*, 800 F.3d 113 (3d Cir. 2015).

space limits, (2) must be of the kind the employee is employed to perform, and (3) if force is intentionally used by the employee against another, the use of force cannot be unexpectable by the employer. *See Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1272 (Pa. Super. 1979) (quoting the Restatement (Second) of Agency § 228); *Lewald v. Pennsylvania Dep't of Corr.*, No. 22-04625, 2023 WL 8283173, at *8 (E.D. Pa. Nov. 30, 2023) (citing *Boucher*, 2021 WL 11096471, at *9).

In the prison context, Courts have routinely recognized that there are circumstances where moderate force is routine. *See Robus v. Pennsylvania Dep't of Corr.*, No. 04-2175, 2006 WL 2060615, at *9 (E.D. Pa. July 20, 2006). But where an "intentional tort was unprovoked, unnecessary or unjustified by security concerns or penological goals, courts have ruled that such conduct does not, as a matter of law, fall within the scope of employment," even if the employee was on duty when the incident occurred. *Wesley*, 2007 WL 1655483, at *15.

1. *March 21 Incident: Assault and Battery*

Plaintiff argues that in holding him down while the Doctor removed a piece of glass lodged in Plaintiff's foot, Officer Keil should be held liable for assault and battery. But in assisting the physician with a medically uncooperative patient in need of a minor medical procedure, Keil was squarely acting within the scope of his employment. As a prison officer entrusted with the "care, custody, and control of DOC inmates," he was performing his job responsibility of caring for Plaintiff by facilitating the provision of necessary medical care, within the prison facility during work hours. 18 Pa.C.S. § 501. It would not be surprising to the Department of Corrections that an officer might use moderate force to allow doctors to provide medical care, especially where the procedure at issue is painful and Plaintiff was likely squirming in discomfort. Officer Keil was

thus acting within the scope of his role, and this cause of action against him is barred by sovereign immunity.[14]

*2. June 1 Incident: Assault and Battery*

Plaintiff next asserts that at a mealtime on June 1, 2023, Officer Barretto told Plaintiff that he would never receive his legal property because of all the grievances he had filed. Angered by this response, Plaintiff wrapped his towel around the food aperture to prevent it from closing. Purportedly, Officer Barretto then exclaimed that he was "going to Rodney King [Plaintiff's] ass," and proceeded to beat Plaintiff in a cell to unconsciousness. Compl. ¶ 22. Plaintiff brings claims of assault and battery against Officer Barretto based upon this incident.

As Plaintiffs pleads the facts, Officer Barretto was at the outset acting within the authorized time and space limits of his role. But if Plaintiff's allegations are true, Officer Barretto employed serious, escalatory force against Plaintiff, beyond what would be necessary to promote any legitimate penological goals, or what could reasonably be expected by the Commonwealth.

This case is not as strong as some others where courts have allowed plaintiffs' claims to survive the pleading stage, for in many of those cases, the officer's alleged attack was entirely unprovoked. *See Robus*, 2006 WL 2060615, at *3 (where corrections officer allegedly beat the plaintiff and placed him in the restricted housing unit, without justification); *see also Velykis v. Shannon*, 06-0124, 2006 WL 3098025, at *3 (M.D. Pa. Oct. 30, 2006) (where corrections officer allegedly slammed a van door on plaintiff's head without any justification).

---

[14] It is somewhat unclear which of Plaintiff's many causes of action he views as associated with the March 21 medical procedure. But even if Plaintiff's cursory assertions of intentional infliction of emotional distress, reckless endangerment, and negligent endangerment were intended to be linked to the March 21 incident, these tort claims would similarly be barred by sovereign immunity, without any applicable exception.

Here, Officer Barretto did not act entirely without provocation, for in wrapping his towel around the food aperture, Plaintiff was undeniably disruptive. But if the facts are as Plaintiff alleges, Plaintiff's jamming of his towel was insufficient to trigger the level of force from Officer Barretto that it did. Officer Barretto was not employed to instigate attacks on inmates, and while "the Department would expect that force might be used at some point against an inmate, it would not expect the deliberate and unjustified use of force, apparently totally divorced from any need of the officer to exert control over the prisoner." *See Velykis*, 2006 WL 3098025 at *4; *see also Miller v. Hogeland,* 2000 WL 987864, at *3-4 (E.D. Pa. July 18, 2000) (district justice's alleged act of deliberately flinging a phone at the plaintiff may not come within his scope of employment and hence sovereign immunity was unavailable at the pleading stage); *Allen v. Co. Robert Hollowood*, No. 19-1258, 2024 WL 36967, at *4 (W.D. Pa. Jan. 3, 2024) ("[A] correctional officer is not acting within the scope of his or her employment, and thus not entitled to the protection of sovereign immunity, when they assault an inmate without justification.").

Further, where an officer's use of force is driven by personal concerns, it is much less likely that the use of force is within the range of employment responsibilities with which they are tasked. *See R.A. ex rel. N.A. v. First Church of Christ*, 748 A.2d 692, 700 (Pa. Super. 2000) ("[A]n assault committed by an employee upon another for personal reasons . . . is not actuated by an intent to perform the business of the employer and, as such, is not within the scope of employment."); *see also Robus,* 2006 WL 2060615, at *2 (where an officer criticized an inmates filing of a lawsuit before ordering his placement in restrictive housing where he was then beaten by officers, the officer was acting beyond the scope of his duty because he was motivated by personal, rather than professional reasons).

At this stage, Gorrio adequately pleads that Barretto ridiculed him for his filing of grievances and made an outlandish reference to a Rodney-King style beating, before purportedly launching a full-scale physical assault. It is plausible to infer from Barretto's commentary that his attack against Gorrio was driven by personal animus, not merely by a need to promote security within the prison, particularly if the impetus for the use of force was Gorrio's tampering with the food aperture, an annoying, yet nonviolent act. If the attack were personally motivated or retaliatory, it would fall beyond the scope of Officer Barretto's duties, and would not be a use of force that the Department would reasonably expect.

Drawing all inferences in Plaintiff's favor, Plaintiff sufficiently pleads that Officer Barretto was not acting within the scope of his employment, and is thus not entitled to sovereign immunity at this stage of the proceedings.[15]

*3. June 5 Incident: Negligence*

Plaintiff alleges that Officer Nesmith, Sergeant Rivera, and Lieutenant Thompson were negligent in failing to properly heed his assertion that he had swallowed a razor. But Plaintiff does not allege that the Officers were acting beyond the scope of their duties, nor does he assert that any of these Officers used force against him. Instead, he describes Officers, acting within the authorized time and space of their roles, who considered Plaintiff's statement, escorted him to

[15] Plaintiff sues each of the Commonwealth Defendants in both their individual and professional capacities, seeking monetary relief. The Eleventh Amendment bars Plaintiff's official capacity claims. "[A]n official capacity suit against a state official is really a suit against the state," and "[s]tates and state actors are immune from suits for money damages under the Eleventh Amendment unless: (1) the State waives its immunity; (2) Congress specifically abrogates the states' immunity; or (3) the plaintiff seeks injunctive relief against an individual." *Doe v. Schorn*, 711 F.Supp.3d 375, 386 (E.D. Pa. 2024); *Batchelor v. Simmonds*, No. 24-4981, 2025 WL 221351, at *5 (E.D. Pa. Jan. 16, 2025). The Commonwealth of Pennsylvania has not waived its immunity in civil rights cases, nor does Plaintiff seek injunctive relief here. Therefore, the assault and battery claims may only proceed against Officer Barretto in his individual capacity.

receive appropriate medical screening, and after a medical professional determined that no serious threat existed, escorted him back to his cell. Without any applicable exception to sovereign immunity under § 8522(b), this cause of action must also be dismissed.

Accordingly, Plaintiff's claims of assault and battery related to the March 21 incident and negligence related to the June 5 incident are barred by sovereign immunity and must be dismissed. But Plaintiff's claims of assault and battery against Officer Barretto related to the June 1 incident may proceed to discovery.

**IV. Conclusion**

For the reasons set forth above, summary judgment will be entered against Plaintiff on his Section 1983 claims for failure to exhaust. The Commonwealth Defendants' Motion to Dismiss will be granted as to Plaintiff's state law claims relating to the March 21 and June 5 Incidents. The Motion to Dismiss will be denied as to the state law claims asserted against Officer Barretto in his individual capacity for assault and battery related to the June 1 Incident. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge