IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL GORRIO** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 23-4366** |
| | : | |
| **CO KEIL, *et al.*** | : | |

| | |
|---|---|
| **McHUGH, J.** | **February 25, 2026** |

## MEMORANDUM

Plaintiff Michael Gorrio, a pro se litigant, brings this civil rights action against various correctional officers at SCI Phoenix, where he was incarcerated during the events at issue. I granted several officers' motion to dismiss in part, dismissing most of Plaintiff's federal and state law claims against them but allowing his intentional tort claims against one officer to proceed to discovery. The remaining defendant, Dr. Saeed Bazel, a physician employed by a private health care provider at the prison during the relevant period has moved separately, seeking to dismiss the claims against him in light of his employer's Chapter 11 reorganization plan. The plan was confirmed by the United States Bankruptcy Court for the Southern District of Texas in May 2025. Dr. Bazel contends that Plaintiff failed timely to opt out of the plan's third-party release thereby discharging and releasing Dr. Bazel from his claims and becoming bound by the plan's permanent injunction. Plaintiff has not opposed the motion, despite ample opportunity to do so.

Because Dr. Bazel moved to dismiss based on matters outside the pleadings that were neither integral to nor explicitly relied upon in the Complaint, I decided to treat his motion as one seeking summary judgment. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287-88 (3d Cir. 1999). Consequently, I entered an order providing the parties with notice of my intent to convert the motion to dismiss into a motion for summary judgment and granting them 14 days

to present additional material relevant to the motion, should they deem it necessary to do so. Neither party presented any such material. With those 14 days having passed, Dr. Bazel's motion is now governed by the familiar standards of Federal Rule of Civil Procedure 56, as amplified by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986), and ripe for adjudication.

The undisputed record is clear that, despite receiving adequate notice of the reorganization plan, Plaintiff did not timely opt out of the plan's third-party release, thereby discharging and releasing Dr. Bazel from his claims and becoming bound by the plan's permanent injunction. Dr. Bazel is therefore entitled to judgment as a matter of law, and his motion must be granted.

## I.    Relevant Background

On January 27, 2025, Dr. Bazel filed a suggestion of bankruptcy and notice of stay, requesting this Court to stay this action based upon a bankruptcy proceeding pending in the United States Bankruptcy Court for the Southern District of Texas involving Wellpath, Dr. Bazel's employer during the relevant time period. ECF 30. I then entered an order severing and staying Plaintiff's claims against Dr. Bazel. ECF 37.

On March 18, 2025, the bankruptcy court entered an order, which, among other things, required the debtors to serve their proposed Chapter 11 reorganization plan and related notices on potential claimants and scheduled the hearing at which the court would consider confirming the plan for April 30, 2025. *In re Wellpath Holdings, Inc., et al.*, No. 24-90533 (Bankr. S.D. Tx.), ECF No. 1867.[1] Over the ensuing weeks, the debtors filed affidavits confirming service through mail and publication in the April 2025 edition of *Prison Legal News*, among other national publications. *Wellpath*, ECF Nos. 1993, 2037, 2121, 2315, 2258. On May 1, 2025, the day after

---

[1] The bankruptcy judge initially set the opt-out deadline for incarcerated claimants for "60 days after the Confirmation Date"—June 30—but thereafter extended this to 90 days in the Confirmation Order.

the confirmation hearing, the bankruptcy court confirmed the debtors' Chapter 11 reorganization plan ("Confirmation Order"), which took effect on May 9, 2025. *Wellpath*, ECF No. 2596.

Importantly, the Confirmation Order set July 31, 2025, as the extended deadline for incarcerated claimants to opt out of the plan's third-party release. *Id.* at 1, 82. It appears many such individuals opted out. *Wellpath*, ECF No. 2528 at 68; *see, e.g.*, *Wellpath*, ECF Nos. 2726-2728. On August 26, 2025, roughly three weeks after that deadline passed, and without any evidence that Plaintiff timely opted out, Dr. Bazel moved to dismiss Plaintiff's claims against him in this action. Mot. to Dismiss, ECF 45. Dr. Bazel asserts that Plaintiff's failure to timely opt out of the third-party release means the plan's permanent injunction bars him from bringing his claims against Dr. Bazel. Without receiving a response from Plaintiff during the period provided for in Local Rule 7.1(c), and in light of his status as an incarcerated *pro se* litigant, I entered an order requiring him to respond within 40 days and directing him to offer proof of his timely election to opt out of the third-party release within 30 days. ECF 46. I also informed Plaintiff that he could voluntarily dismiss any claims against Dr. Bazel and explicitly cautioned him that the plan's permanent injunction could preclude him from pursuing his claims against Dr. Bazel. *Id.* at 2, n.2.

## II.    Legal Standard

The question is whether the Confirmation Order enjoins Plaintiff from pursuing his claims against Dr. Bazel. The answer depends on the adequacy of notice that Plaintiff received about the debtors' Chapter 11 reorganization plan in the bankruptcy proceeding, which presents a mixed question of law and fact, because it requires applying established legal standards to this case's unique facts. *See U.S. Bank Nat. Ass'n v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 394 (2018) (defining a mixed question of law and fact as one that asks "whether the historical facts found satisfy the legal test chosen"); *see also Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 228 (2020)

3

("[W]e have often used the phrase 'mixed questions' in determining the proper standard for appellate review of a . . . bankruptcy . . . decision that applies a legal standard to underlying facts.").

Whether a reviewing court applies a clear error or a de novo standard when assessing a bankruptcy judge's adequacy-of-notice determination appears to be an open question in this Circuit. *See In re Congoleum Corp.*, 149 F.4th 318, 331 (3d Cir. 2025) (noting that the Third Circuit has "sometimes reviewed the adequacy of notice in bankruptcy proceedings for clear error" but declining to decide whether clear error or de novo review applied in the case before it); *see, e.g.*, *Chemetron Corp. v. Jones*, 72 F.3d 341, 347 (3d Cir. 1995) (applying clear error standard). Other circuit courts have diverged on this issue, employing both clear error and de novo review in bankruptcy and other contexts. *See, e.g.*, *In re Smith*, 582 F.3d 767, 778-79 (7th Cir. 2009) (discussing standard of review regarding adequacy of notice of bankruptcy petition) (collecting cases); *In re Brawders*, 503 F.3d 856, 866 (9th Cir. 2007) ("Whether adequate notice has been given for purposes of due process in a particular instance is a mixed question of law and fact that we review de novo."). Like the Third Circuit in *Congoleum*, 149 F.4th at 331, I do not decide which review applies here because I would agree with the bankruptcy court under either standard.

III.    **Discussion**

A.  **The adequacy of notice in bankruptcy matters must comport with due process.**

When a litigant is barred from having his "day in court" because of the resolution of a bankruptcy, the overarching concern is one of due process. This is because notice is "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Indeed, the U.S. Bankruptcy Code integrates this core principle of our legal system into its provisions. *See* 11

U.S.C. § 342(a) ("There shall be given such notice as is appropriate . . . of an order for relief . . . under [the Bankruptcy Code].").

Under bankruptcy law, the confirmation of a debtor's reorganization plan "discharges the debtor from any debt that arose before the date of such confirmation." *Jones v. Chemetron Corp.*, 212 F.3d 199, 209 (3d Cir. 2000) (quoting 11 U.S.C. § 1141(d)(1)(A)). Generally, "confirmation of the debtor's reorganization plan discharges all prior claims against the debtor." *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) ("*Chemetron I*"); *see* 11 U.S.C. § 524(a)(2) ("A discharge in a case under this title . . . operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any such debt as a personal liability of the debtor."). However, due process dictates that without proper notice of the bankruptcy proceeding, a claimant "will not have a meaningful opportunity to protect his or her claim," *In re Grossman's Inc.*, 607 F.3d 114, 126 (3d Cir. 2010), and therefore, insufficient notice "precludes discharge of a claim in bankruptcy," *Chemetron I*, 72 F.3d at 346; *see Jones*, 212 F.3d at 209.

It is well-established that due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Congoleum*, 149 F.4th at 332 (quoting *Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 265 (3d Cir. 2000)). For notice purposes in the bankruptcy context, claimants (*i.e.*, creditors) fall into two categories: "known" and "unknown." *Chemetron I*, 72 F.3d at 346. "[A] 'known' creditor is one whose identity is either known or 'reasonably ascertainable by the debtor.'" *Id.* (quoting *Tulsa Pro. Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490 (1988)). "A creditor's identity is 'reasonably ascertainable' if that creditor can be identified through 'reasonably diligent efforts.'" *Id.* (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n.4 (1983)). "Known creditors must be provided with actual written

notice of a debtor's bankruptcy filing and bar claims date." *Id.* (citing *City of New York v. N.Y., N.H. & H.R. Co.*, 344 U.S. 293, 296 (1953)). Although the adequacy of notice provided is a case-specific question, *see Wright v. Owens Corning*, 679 F.3d 101, 108 (3d Cir. 2012), a claimant's "due process right to adequate notice is 'more than satisfied' when the creditor 'received *actual* notice of the filing and contents of [the debtor's] plan," *Chemetron I*, 72 F.3d at 346 (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010)).

**B. The Confirmation Order bars Plaintiff's claims against Dr. Bazel.**

After careful review of the Confirmation Order, the docket in the bankruptcy proceeding, and the debtors' Chapter 11 reorganization plan, and Plaintiff's actual notice of the bankruptcy proceeding, I conclude that he is permanently enjoined from pursuing his claims against Dr. Bazel in this action.

*1. The debtors' reorganization plan applies to Plaintiff and Dr. Bazel.*

A select number of the plan's provisions are relevant to deciding this motion. To begin, Article IX.A provides, in relevant part, that once the plan takes effect, all claims against the debtors will be discharged:

> [T]he distributions, rights, and treatment that are provided in the Plan shall be in *complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever*, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties . . . including demands, liabilities, and Causes of Action that arose before the Effective Date.

Ch. 11 Plan, *Wellpath*, ECF No. 2596 at 128 (emphasis added).

Article IX.D contains the third-party release at issue, which provides, in relevant part, that the "Releasing Parties," as defined in the plan, "shall be deemed to have . . . forever, released and discharged each Released Party from any and all claims . . . causes of action . . . [and] actions . . .

of any kind or character whatsoever . . . asserted or assertable on behalf of any of the Releasing

Parties . . . based on or relating to, or in any manner arising from, in whole or in part, the Debtors."

*Id.* at 132 ("Third-Party Release").  Relevant here, the plan defines "Releasing Parties" as

> *each Holder of a Claim that is or was an incarcerated individual that does not affirmatively elect to opt out of being a Releasing Party* by delivering such election (by checking the appropriate box on such incarcerated individual's Ballot, or by another means of written communication, to indicate that such incarcerated individual elects to opt out of the Plan's release provisions) to the Debtors, the Claims and Solicitation Agent, or the Bankruptcy Court *by no later than 90 days after the Confirmation Date.*

*Id.* at 82 (emphasis added).  The Confirmation Date was the date on which the bankruptcy court

entered the Confirmation Order on the docket, *id.* at 67, which was May 1, 2025, *id.* at 1.

Therefore, the deadline for incarcerated claimants, including Plaintiff, to opt out of the Third-Party

Release was July 30, 2025.

As I noted in a prior order, *see* ECF 46 n.2, the plan includes an injunction clause, providing

that any claimant who fails to "timely opt out of the Third-Party Release" will be "permanently

enjoined, from and after the Effective Date . . . commencing or continuing in any manner any

action or other proceeding of any kind on account of or in connection with or with respect to any

such claims or interests" against the Released Parties, Ch. 11 Plan, *Wellpath*, ECF No. 2596 at

134.  The plan includes "each Debtor . . . [and] the Related Parties" in its definition of "Released

Parties," *id.* at 81, and further defines "Related Party," in relevant part, as "with respect to any

Entity, such Entity's . . . employees . . . acting in such capacity whether current or former," *id.*

Taking these provisions together, it follows that Plaintiff, an incarcerated individual with

potential claims against the debtors and their employee, is therefore a "releasing party" under the

plan, who needed to timely opt out of the Third-Party Release to avoid becoming bound by its

terms and the corresponding injunction.  Moreover, Dr. Bazel is a "related party" under the plan

because he was the debtors' employee during the relevant period.  ECF 30 at 1; Compl., ECF 2.

Against that backdrop, I turn now to address whether Plaintiff received adequate notice of the reorganization plan and the opt-out deadline.

>   *2.  Plaintiff received adequate notice of the plan and the opt-out deadline.*

As an initial matter, Plaintiff is a "known" creditor for notice purposes because, as a result of filing this lawsuit, his identity was known or reasonably ascertainable by the debtors in the bankruptcy proceeding.  *See Chemetron I*, 72 F.3d at 346.  Here, Plaintiff was on notice of the bankruptcy proceeding having been served with the bankruptcy petition in late January 2025.  ECF 30.  This was well before the deadline to opt out.  Additionally, the debtors filed multiple affidavits of service on the bankruptcy docket in the weeks leading up to the confirmation hearing, certifying that they mailed the reorganization plan and related notices to incarcerated claimants and conspicuously displayed the Third-Party Release, as well as the procedure and deadline to opt out.  *See, e.g.*, *Wellpath*, ECF Nos. 1993, 2037, 2121, 2315.  In fact, many incarcerated individuals timely opted out.  *Wellpath*, ECF No. 2528 at 68; *e.g.*, *Wellpath*, ECF Nos. 2726-2728.  There can be no serious debate that such repeated efforts to provide actual notice assuredly pass muster for due process purposes.  *See Pope*, 485 U.S. at 490 ("We have repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice.") (collecting cases); *Chemetron I*, 72 F.3d at 346.  Therefore, the bankruptcy court's finding that incarcerated claimants, including Plaintiff, received adequate notice of the reorganization plan and the opt-out deadline finds ample support in the record under either standard of review.

>   *3.  The Confirmation Order enjoins Plaintiff's claims against Dr. Bazel.*

Plaintiff has neither challenged the bankruptcy court's notice determination in that proceeding nor presented any evidence to this Court that he timely opted out of the plan's Third-Party Release, despite having been given notice of the bankruptcy proceeding several months

before the opt-out deadline.  ECF 30.  Although courts accord imprisoned *pro se* litigants a measurable degree of latitude, "[a]t the end of the day, they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants."  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

Despite the Court granting Plaintiff multiple extensions within which to respond to Dr. Bazel's motion and contest the Confirmation Order's applicability to him, *see* ECF 46, 51, 58, he has failed to do so.  As the Third Circuit has observed, "there are limits to [courts'] procedural flexibility," *Mala*, 704 F.3d at 245, and even as an incarcerated *pro se* litigant, Plaintiff is nonetheless "responsible for his failure to . . . comply with [the] [C]ourt's orders," *Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008).  Because Plaintiff has not provided any evidence that he timely opted out of the Third-Party Release, I must conclude that Dr. Bazel has been released and discharged from any claims arising out of the events pled in the Complaint and permanently enjoined from pursuing these claims.  Accordingly, no genuine dispute of material fact exists between the parties and Dr. Bazel is entitled to judgment as a matter of law, with the result that the motion must be granted.

## IV.    Conclusion

For the reasons set forth above, Dr. Bazel's Motion to Dismiss will be granted.  An appropriate order follows.

  /s/ Gerald Austin McHugh
United States District Judge

9